IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PATRICK O. NEISS,<br><br>Petitioner,<br><br>vs.<br><br>PETE BLUDWORTH,<br><br>Respondent. | Cause No. CV 21-103-BLG-SPW<br><br>ORDER |

This case comes before the Court on state pro se Petitioner Patrick O. Neiss' petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.)

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.*; see also, 28 U.S.C. § 1915A(B)(1),(2) (the court must dismiss a habeas petition or portion thereof if the prisoner raises claims that are legally "frivolous or malicious" or fail to state a basis upon which habeas relief may be granted). As explained below, Neiss' ineffective assistance of counsel claim does not survive deferential review under 28 U.S.C. § 2254(d). The petition will be dismissed.

1

I.  **BACKGROUND**

Neiss is a Montana state prisoner who was convicted by jury of deliberate homicide and evidence tampering in the Thirteenth Judicial District Court, Yellowstone County, Montana. (Doc. 1 at 2.) He is serving a 110-year sentence, currently incarcerated at Crossroads Correctional Center, Shelby, Montana. (Doc. 1 at 1.)

Neiss was convicted of killing his neighbor, Frank Greene, after several years of animosity between the two. *State v. Neiss*, 2019 MT 125, ¶¶ 3 – 4.[1] Law enforcement was aware of the neighbors' conflict, and Neiss was immediately a suspect in the death, which occurred on March 7, 2013.

> A few days later, Detective Shane Bancroft applied for a search warrant for Neiss's property (March 2013 Warrant). In the warrant application, Detective Bancroft included detailed information connecting Neiss to Greene's death, including evidence from the crime scene investigation, witness statements, prior police reports, and court records. Detective Bancroft stated he had probable cause to believe officers would find evidence on Neiss's property of deliberate homicide and—because officers were unable to locate the murder weapon—evidence tampering. Detective Bancroft believed officers would find evidence including firearms, ammunition, spent shell casings, silencers, biological material, and shoe impressions consistent with those found at the crime scene. Detective Bancroft also described the following items as potential evidence: "[c]ell phones, IPads, computers and/or other electronic devices and the information contained therein"; and "[i]ndicia of Occupancy/Ownership in the

---

[1] The Court directed the State to file several documents from the state court record. (Doc. 5.) Citations in this order will refer to the documents now in the Court's docket, other than the two opinions of the Montana Supreme Court, which will be cited by their publicly available citation.

2

> form of documents, receipts, statements, mail, billing statements, letters, notes, [and] vehicle registration/titles."

*Id.*, at ¶ 7. Officers seized three computers from Neiss' home as a result of this search. The computers were not searched at the time but stored. Neiss was not arrested on an Information until August of 2014, almost a year and a half after the homicide.

On May 15, 2015, Neiss moved to suppress the fruits of the 2013 warrant on several detailed grounds. (Doc. 7-35.) Neiss identified what he characterized as unconstitutionally-obtained, misleading, or stale information that, when excised, left the warrant without sufficient probable cause. (Doc. 7-35 at 11.) Neiss also objected to the early morning, no-knock service of the warrant. The district court held a hearing on July 13, 2015 and subsequently denied the motion. (Doc. 7-16.)

After the 2013 search, the computers from Neiss' home had been stored and unsearched. On August 12, 2015, officers applied for another search warrant, this time to search the contents of the computers. In part, the affidavit in support of the warrant read:

> During the search of the residence on March 14, 2013, Investigators noted computer printouts that would indicate that someone had been actively using the computer. Additionally, Investigators were aware that on at least one occasion the Defendant had written a letter to himself that detailed his history with Greene. While the letter was handwritten; Investigators thought it was possible that Neiss may have kept a journal or log of events on one or more of the computers.

3

> Finally, during a subsequent search of the property at 7200 Central Avenue on August 12, 2014 (pursuant to a Search Warrant signed by Judge Todd earlier in the day), Investigators located an item we thought could possibly have been used as a silencer. The item was what appeared to be the body of a mag10 light style flashlight. The interior of the item had residue inside it. Later when the suspect's son was interviewed he stated that his father had attached the item to the end of a firearm in the past. Additionally, the Montana Crime lab tested the item and determined that there were substances consistent with gunshot residue. Investigators were interested to know if the computers had been used to obtain information about silencers or other firearms related questions. Investigators noted that at least five rounds had been fired in the Homicide, yet no one in the home or neighborhood reported hearing any gun shots.
>
> Investigators are asking for the search warrant to be granted to attempt to analyze the devices for data that may be related to the homicide, the planning of the homicide, and the investigation of crimes, including but not limited to, the homicide. Again, the computers were seized pursuant to a search warrant signed by Judge Todd on March 13, 2013. Due to the nature of this case and the development of additional information, your affiant is now seeking another search warrant out of an abundance of caution based on information contained herein.

*State v. Neiss*, 2019 MT 125, ¶ 10. A subsequent search of the computers found, on one, that a person had searched for information about how to make homemade suppressors and other suppressor-related information. This information was relevant to the prosecution because one of the peculiarities of Green's death was that none of his neighbors, nor his girlfriend who was in his house at the time he was shot in his driveway, had heard any shots. (Doc. 7-3 at 48.)

On September 8, 2015, the district court held another wide-ranging pretrial motions hearing. (Transcr. at Doc. 7-3.) At this hearing, when the parties were

4

arguing about the admission of what were construed as homemade "silencers," trial counsel first raised the issue of the validity of the 2015 warrant. (Doc. 7-3 at 49.) Counsel stated that she intended to file a motion related to this search warrant. *Id.*

Neiss filed the motion to suppress this computer evidence on September 9, 2015. (Doc. 7-40.) Neiss contended that the initial 2013 warrant that got the computers into law enforcement hands was overbroad and lacked particularity. Thus, the police could not legitimately search the computers further. The motion also disputes the sufficiency of probable cause for the 2015 warrant, and the delay between seizing the computers in 2013 and searching them in 2015.

Neiss followed with two other motions regarding the computer search, one a motion in limine with "supplemental briefing regarding suppression of computer search," (Doc. 7-43), and one a motion to strike based on late disclosure. A transcript of an *in camera* pretrial conference, apparently from September 14, 2015, is attached to this motion, in which Neiss' counsel argued that the computer searches were unreasonable and untimely, and the warrant was overbroad. (Doc. 7-43 at 15.)

Neiss' trial was set for January 2016. The district court held a final pretrial hearing on December 7, 2015. (Doc. 7-4.) One of the detectives involved in the search of Neiss' home testified. Neiss' counsel cross-examined him regarding

5

seizure of the computers. (Doc. 74 – 79.) The examination focused mostly on probable cause and delay.

The district court denied the motions related to the computer searches. (Doc. 7-18; the district court had already denied the initial motion to suppress related to the 2013 warrant but did so again here.) The court detailed why the 2013 "was specific enough to reasonably identify that computers were to be seized." (Doc. 7-18 at 7.) The court concluded there was sufficient probable cause for the 2013 warrant.

Turning to the 2015 warrant, the district court focused mostly on probable cause, but in conclusion, stated that "the items to be seized were described with particularity—records of internet searches, personal documents to include journals, notes and receipts, photos, and emails." (Doc. 7-18 at 14.) The 2015 warrant was valid.

Neiss was convicted at trial in January 2016. At trial, counsel objected to the introduction of at least one of the fruits of the 2015 search, one of the items described as a home-made suppressor. (Doc. 7-25 at 21.) The State's case remained circumstantial: the murder weapon was never found, and there was no direct witness testimony about Neiss' involvement. Evidence from the computer was introduced in conjunction with neighbors' testimony that they heard no gunshots on the night of the murder. *Neiss,* 2019 MT 125, at ¶ 12.

> Neiss appealed his conviction on three grounds:
>
> 1. Did the District Court properly deny Neiss's motion to suppress evidence seized pursuant to a search warrant that did not explicitly authorize a no-knock entry?
>
> 2. Did the District Court properly deny Neiss's motion to suppress evidence obtained through a forensic search of his computer?
>
> 3. Did the District Court abuse its discretion by instructing the jury to choose the "most reasonable" interpretation of circumstantial evidence when there are two competing interpretations—one that supports innocence and one that supports guilt?

*Neiss*, 2019 MT 125, ¶ 1. The Montana Supreme Court devoted most of its opinion to the no-knock warrant issue, as that was a matter of unclear state law. On the issue of the search of Neiss' computer, the Supreme Court concluded that the officers lawfully seized the computers in 2013 and lawfully searched them in 2015.

Neiss' particular challenges on appeal related to the computers were: (1) the August 2015 Warrant was invalid on its face because it erroneously referred to New Jersey as the location of the computers and never referenced any crime under investigation, (2) the 2015 warrant lacked particularity, (3) the 2013 warrant lacked particularity and was overbroad, and (4) the delay between the seizure pursuant to the March 2013 Warrant and the ultimate search—which only occurred after the August 2015 Warrant—was unreasonable. (Appellant's Br., Doc. 7-14 at 31 – 43.)

The Supreme Court did not consider issues 1 and 2, concluding that they were raised for the first time on appeal and therefore barred. *State v. Neiss*, 2019

7

MT 125, ¶ 48. The Supreme Court affirmed Neiss' conviction. Two judges dissented.

Neiss, now pro se, filed a Petition for Post-Conviction Relief in the district court in Yellowstone County, asserting that trial counsel was ineffective for failing to "file the proper motion that contested the lack of particularity and breadth of the 2015 warrant." (Doc. 7-25 at 23.) Neiss' petition also discussed various circumstantial evidence used against him at trial. *Id.*, at 24 -28. Neiss also asserted that appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness on direct appeal with the Supreme Court. *Id.*, at 30.

After response from the State, the district court denied Neiss' petition, finding that he had failed to carry his burdens under *Strickland v. Washington*, 466 U.S. 668 (1984). Of note, the Court stated that it had addressed the issue of particularity of the warrant in its order denying Neiss' trial court motion in limine. (Doc. 7-57 at 8, referring to Doc. 7-18 at 14 - 15.) As such, Neiss could not meet *Strickland's* prejudice prong, because the court had considered the issue. The trial court also concluded that the weight of the other evidence against Neiss made the value of the computer search information unlikely to change the outcome of the trial. *Id.*

Neiss subsequently filed a Petition for Post-Conviction relief in the Montana Supreme Court. (Doc. 7-59.) In this petition, he raised two issues:

>1. Whether trial counsel failed to provide effective assistance of counsel, as required by the Sixth and Fourteenth Amendments to the United States Constitution and the counterparts in the Montana Constitution, by failing to move to quash the fruits of a search warrant issued in 2015, on the grounds that the search warrant was not particularized and was overbroad.
>
>2. Whether appellate counsel failed to provide effective assistance of counsel in accordance with the Sixth and Fourteenth Amendments to the United States Constitution and its counterparts in the Montana Constitution, by failing to raise a claim that trial counsel did not provide the constitutionally mandated effective assistance of counsel because trial counsel failed to make a proper motion to quash the fruits of a search warrant issued in 2015, on the grounds that the search warrant was not particularized and was overbroad.

(Doc. 7 -58 at 7.) In an unpublished memorandum opinion, the Montana Supreme Court denied Neiss' petition. *Neiss v. State*, DA 21-0071, 2021 MT 250N.

## II. NEISS' CLAIMS

Neiss' petition in this Court asserts two claims: (1) trial counsel was ineffective for "failing to preserve" a particularity objection to the 2015 search warrant, (Doc. 1 at 4 - 5); and (2) appellate counsel was ineffective for failing to assert an ineffectiveness of trial counsel (IATC) claim on direct appeal. *Id.* at 5 - 6. Neiss also filed a memorandum in support of his petition, though it focuses only on the failure to preserve argument that applies to his trial counsel and does not consider appellate counsel's performance. (Doc. 4.) Neiss asks this Court to vacate his judgment of conviction and order his release if the State does not afford a new trial within 60 days. (Doc. 1 at 7.)

9

## III. ANALYSIS

Neiss properly exhausted his state remedies, and the Montana Supreme Court addressed on the merits the same claims he raises here. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a habeas corpus application "with respect to any claim that was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2); *Knowles v. Mirzayance,* 556 U.S. 111, 114 (2009).

" '[C]learly established Federal law'... is the governing legal principle or principles set forth by the Supreme Court [in its holdings] at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-71 (2003). A state court's decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000).

A state court's factual findings are unreasonable if "reasonable minds

10

reviewing the record" could not agree with them. *Brumfield v. Cain*, 576 U.S.305, 313-14 (2015) (citations omitted). "For relief to be granted, a state court merits ruling must be so lacking in justification that there was an error…beyond any possibility for fair-minded disagreement." *Bemore v. Chappell*, 788 F. 3d 1151, 1160 (9th Cir. 2015). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### A. Ground One: Ineffective Assistance of Trial Counsel re: 2015 Warrant

Neiss' underlying Fourth Amendment claim is itself not cognizable in a federal habeas action. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Crater v. Galaza*, 508 F.3d 1261, 1269 (9th Cir. 2007). However, he may still bring the related claim that his counsel was ineffective in handling a Fourth Amendment issue at trial. *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Neiss must establish (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

> "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks and brackets omitted). On the other hand, when the Court cannot perceive counsel's conduct as reasonable, relief is justified if counsel's performance caused the defendant adequate prejudice. *See, e.g.*, *Staten v. Davis*, 962 F.3d 487, 495–96, 497–99 (9th Cir. 2020); *Vega v. Ryan*, 757 F.3d 960, 967–68 (9th Cir. 2014) (per curiam).

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings . . . and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). The standard is "difficult to meet," and a "petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks omitted). "Establishing that a state court's application of *Strickland* was unreasonable under §2254(d) is all the more difficult. The standards created by *Strickland* and §2254(d) are both 'highly deferential' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted).

Neiss characterizes his dissatisfaction with trial counsel as a failure to preserve the issue of particularity. However, in his initial post-conviction petition

12

to the state court, his complaint was their failure to move to suppress the evidence on what he considers the proper grounds, i.e. particularity. (Doc. 7-25 at 22.) The issue is only characterized as "failure to preserve" because that is the language of the dissent in the Montana Supreme Court on direct appeal. *State v. Neiss*, 2019 MT 125, ¶ 111. The end result of either characterization is the same; by moving adequately to suppress in the district court, counsel would effectively preserve the issue for review.

Neiss made the same claim to the Montana Supreme Court. (Doc. 7-58.) In its unpublished memorandum opinion, the Montana Supreme Court concluded that:

> "Neiss's trial counsel doggedly attempted to suppress the evidence obtained from both the 2013 and 2015 search warrants on multiple grounds. They also attempted to exclude the evidence via motions in limine. Neiss has not carried his heavy burden of rebutting the strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance contemplated by the Sixth Amendment. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Whitlow*, ¶ 14.

*Neiss v. State*, 2021 MT 250N, ¶ 9. This Court agrees. While there is some room for disagreement about how clearly trial counsel raised the issue of particularity, trial counsel's approach was not ineffective. Both the trial judge and the dissent in Neiss' direct appeal concluded particularity had been raised. But even if it hadn't, counsel's wide and repeated efforts to get the computer search evidence suppressed was objectively reasonable. The record shows that, as the Supreme Court stated,

Neiss' trial counsel moved repeatedly, in different contexts, to suppress the evidence found on the computers, both by repeatedly attacking the 2013 warrant through which they were obtained, and the 2015 warrant, after which they were searched. Counsel's decision to focus on certain aspects of these attacks rather than others does not cause their performance to "f[a]ll below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687-88.

The Montana Supreme Court applied the clearly established federal law in relation to this claim, *Strickland*. The Montana Supreme Court's determination on this point is not unreasonable or contrary to law, or an unreasonable application of clearly established federal law; it does not warrant federal habeas relief. 28 U.S.C. § 2254(d)(1)

### B. Ground Two: Ineffective Assistance of Appellate Counsel

Neiss' second ground is that his appellate counsel failed to raise, on direct appeal, the purported ineffectiveness of trial counsel discussed above. (Doc. 1 at 5.) Neiss did not specifically discuss this ground in his supporting memorandum in this Court. (Doc. 4.)

*Strickland*'s two-prong test also applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins,* 528 U.S. 259, 285 (2000). The Montana Supreme Court addressed Neiss' appellate counsel issue by concluding that, since it determined that trial counsel was not ineffective, it follows that Neiss was not

14

prejudiced, in the *Strickland* sense, by appellate counsel's failure to raise the issue. *Neiss,* ¶ 10. Had appellate counsel raised the issue, it would not have prevailed. This conclusion was not unreasonable.

Further, since appellate counsel did, in fact, argue the issue of particularity on appeal, it would be illogical and counterproductive to also argue that trial counsel had been ineffective in failing to preserve the issue in the trial court. If counsel had had a concern that the issue had been given short shrift, a reasonable strategic choice would still be to pursue it and leave any IAC claim to post-conviction relief. Appellate counsel's performance was not ineffective, and the Montana Supreme Court's conclusion was not unreasonable or contrary to law.

## IV.   CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

A certificate of appealability will be denied.

Based on the foregoing, the Court enters the following:

### ORDER

1. Neiss' Petition (Doc. 1) is DENIED and DISMISSED with prejudice.

2. The Clerk of Court is directed, by separate document, to enter Judgment in favor of Respondent and against Petitioner.

3. A certificate of appealability is DENIED.

DATED this 21st day of October, 2022.

_Susan P. Watters_
Susan P. Watters
United States District Court Judge