DAVID F. NESS
Assistant Federal Defender
Federal Defenders of Montana
Great Falls Office
104 2nd Street South, Suite 301
Great Falls, MT 59401
david_ness@fd.org
Phone: (406) 727-5328
Fax: (406) 727-4329
Attorney for Petitioner

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

PATRICK O. NEISS,

Petitioner,

vs.

PETE BLUDWORTH; ATTORNEY GENERAL OF THE STATE OF MONTANA,

Respondents.

**Case No. CV 21-103-BLG-SPW**

**PETITIONER'S REPLY TO RESPONDENTS' ANSWER**

**PETITIONER NEISS'S REPLY TO RESPONDENTS' ANSWER**

SUBMITTED: May 21, 2025

# TABLE OF CONTENTS

**Table of Authorities** ............................................................................................ ii-iv

**A. The Court should review Neiss's claims *de novo* and without regard to the review provisions of 28 U.S.C. § 2254(d).** …………………...…….2-10

**B. Neiss's trial and appellate counsel provided ineffective assistance of counsel…**………………………………………………………...…..10-18

**C. Prayer for Relief**…………………………………………………………18

**Certificate of Service**…………………………………………………………19

# Table of Authorities

**Supreme Court Opinions** **Page(s)**

*Burt v. Titlow*,
571 U.S. 12 (2013) .......... 6

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
467 U.S. 837 (1984) .......... 3

*Cohens v. Virginia*,
19 U.S. (6 Wheat.) 264 (1821) .......... 2

*Danforth v. Minnesota*,
552 U.S. 264 (2008) .......... 2

*Groh v. Ramirez*,
540 U.S. 551 (2004) .......... 15

*Harrington v. Richter*,
562 U.S. 86 (2011) .......... 10, 3

*Kimmelman v. Morrison*,
477 U.S. 365 (1986) .......... 8, 9

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ..........2, 3, 4, 6

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) .......... 4

*Martin v. Hunter's Lessee*,
14 U.S. (1 Wheat.) 304 (1816) .......... 2, 5

*Murray v. Carrier*,
477 U.S. 478 (1986) .......... 9

*Renico v. Lett*,
559 U.S. 766 (2010) .......... 3

*Reynoldsville Casket Co. v. Hyde*,
514 U.S. 749 (1995) .......... 6-7

*Rompilla v. Beard*,
545 U.S. 374 (2005) .......... 10

*Sims v. Georgia*,
385 U.S. 538 (1967) ........................................................................................ 6

*Strickland v. Washington*,
466 U.S. 668 (1984) ........................................................................................ 9

*United States v. Cronic*,
466 U.S. 648 (1984) ........................................................................................ 9

*Williams v. Taylor*,
529 U.S. 362 (2000) ........................................................................................ 16

*Woods v. Etherton*,
578 U.S. 113 (2016) ........................................................................................ 3

*Ylst v. Nunnemaker*,
501 U.S. 797 (1991) ........................................................................................ 10

**Ninth Circuit Opinions**

*Clark v. Broomfield*,
83 F.4th 1141 (9th Cir. 2023) ........................................................................ 10

*Crace v. Herzog*,
798 F.3d 840 (9th Cir. 2015) .......................................................................... 17

*Garding v. Mont. Dep't of Corr.*,
105 F.4th 1247 (9th Cir. 2024) ........................................................................ 9

*Neiss v. Bludworth*,
114 F.4th 1038 (9th Cir. 2024) ..................................................................... 9-10

*United States v. Holcomb*,
132 F.4th 1118 (9th Cir. 2025) ................................................................. 11, 14

*United States v. King*,
737 F. Supp. 3d 1020 (D. Nev. 2024) .......................................................... 15

*United States v. Kow*,
58 F.3d 423 (9th Cir. 1995) ........................................................................ 11, 13

*United States v. Spilotro*,
800 F.2d 959 (9th Cir. 1986) ...................................................................... 10, 11

**Federal Court Opinions**

*650 Fifth Ave. v. Alavi Found.*,
830 F.3d 66 (2d Cir. 2016) ........................................ 13

*Mink v. Knox*,
613 F.3d 995 (10th Cir. 2010) ........................................ 13

*Owens v. United States*,
387 F.3d 607 (7th Cir. 2004) ........................................ 17

*Saranchak v. Sec'y, Dep't of Corr.*,
802 F.3d 579 (3d Cir. 2015) ........................................ 17

*Simpson v. Carpenter*,
912 F.3d 542 (10th Cir. 2018) ........................................ 3

*United States v. Cooper*,
654 F.3d 1104 (10th Cir. 2011) ........................................ 14

*United States v. Galpin*,
720 F.3d 436 (2d Cir. 2013) ........................................ 11, 13

**United States Code**

28 U.S.C. § 2254 ........................................ 1

28 U.S.C. § 2254(d) ........................................ 2

28 U.S.C. § 2254(d)(1) ........................................ *passim*

**State Cases**

*Neiss v. State*,
No. DA 21-0071, 2021 WL 4443830 (Mont. Sept. 28, 2021) .................... 7, 8

*State v. Neiss*,
443 P.3d 435 (Mont. 2019) ........................................ 7

DAVID F. NESS
Assistant Federal Defender
Federal Defenders of Montana
Great Falls Office
104 2nd Street South, Suite 301
Great Falls, MT 59401
david_ness@fd.org
Phone: (406) 727-5328
Fax: (406) 727-4329
Attorney for Petitioner

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| PATRICK O. NEISS,<br><br>Petitioner,<br><br>vs.<br><br>PETE BLUDWORTH; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | **Case No. CV 21-103-BLG-SPW**<br><br>**PETITIONER'S REPLY TO RESPONDENTS' ANSWER** |

The Petitioner, Patrick O. Neiss, through counsel, David F. Ness and the Federal Defenders of Montana, respectfully files this Reply to the Respondents' ("the State") Answer to his amended 28 U.S.C. § 2254 petition.

//

//

### A. The Court should review Neiss's claims *de novo* and without regard to the review provisions of 28 U.S.C. § 2254(d).

#### 1. The provisions of 28 U.S.C. § 2254(d) are unconstitutional under the rationale of the Supreme Court's decision in *Loper Bright Enterprises.*

The Supremacy Clause is a cornerstone of the United States' federal political structure. Under its auspices, the United States Supreme Court has the ultimate power to review state court decisions arising under the Constitution and laws of the United States. *Danforth v. Minnesota*, 552 U.S. 264, 291–92 (2008)("It is basic that when it comes to any such question of federal law, it is 'the province and duty' of this Court 'to say what the law is.'"). Thus, the Supreme Court and its attendant lower federal courts have the final say in matters involving federal law, including constitutional interpretation, and are generally obligated to overrule decisions of state courts that violate that law. *Martin v. Hunter's Lessee*, 14 U.S. 304 (1816); *Cohens v. Virginia*, 19 U.S. 264 (1821).

Section 2254(d)(1), however, has all but stripped federal courts of the ability to review state court decisions affecting the lives and liberty of habeas petitioners. In some cases, review of an erroneous state court decision is literally impossible. As one court put it:

> Where there is no Supreme Court case on point, there is no clearly established federal law for the purposes of AEDPA. And when a defendant "is unable to find any 'clearly established' Supreme Court precedent in support of his claim, habeas relief is impossible to obtain."

> As such, Mr. Simpson's claim "fails at the threshold for lack of clearly established federal law."

*Simpson v. Carpenter*, 912 F.3d 542, 568 (10th Cir. 2018)(citations omitted)(cleaned up).

In other cases, review may be allowed, but overcoming § 2254(d)(1) is virtually impossible and, as a result it forces federal courts to accept state court decisions that are not just erroneous or incorrect – instead, the relevant decision must be "objectively unreasonable" and "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Renico v. Lett*, 559 U.S. 766, 773 (2010). As the State points out in its Answer, "[a] habeas petitioner cannot prevail as long as it is within the "realm of possibility" that "fair-minded jurists could find the state decision to be reasonable." *Woods v. Etherton*, 578 U.S. 113, 118-19 (2010)(per curiam).

Like the *Chevron* doctrine, which was at issue in *Loper Bright*, § 2254(d)(1) unconstitutionally limits the authority of federal courts to hold unlawful and set aside decisions that are not in accordance with federal law.[1] The State nevertheless seeks to distinguish *Loper Bright* from the instant case on three grounds: (1) that *Chevron*'s delegation of authority to executive agencies is "not analogous" to that

[1] *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984).

afforded state courts under the AEDPA; (2) that the decision in *Loper Bright* was based, in part, on a statutory construction argument; and (3) that states, as dual sovereigns, "independently have general" – and presumably coequal – "jurisdiction over federal questions."

The State's first argument rests upon the unremarkable proposition that *Chevron* ceded judicial authority to executive agencies by mandating that federal courts defer to an agency's "reasonable interpretation" of an "ambiguous" statute even if it believed that interpretation to be wrong. Section 2254(d)(1), on the other hand, limits the federal judiciary's power to review state court decisions to those cases where the state court adjudication results in a decision that is "contrary to or involved an unreasonable application of" clearly established federal law. In the State's view, the identity of the delegee of federal judicial authority is the lynchpin that distinguishes the two cases.

It is true that *Loper Bright*, involved the delegation of judicial authority to the executive branch. Such delegation, the majority observed, violated the separation of powers because it violated the principle announced in *Marbury v. Madison*, 5 U.S. 137 (1803), where the Court held that "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024). Section 2254(d)(1), on the other hand, delegates the

resolution of federal constitutional questions to state courts. The distinction the State seeks to draw, however, is one without relevant difference.

In both cases, the federal judiciary has been stripped of its "solemn duty" to interpret federal law. Well over two hundred years ago, the Supreme Court recognized its obligation to review the final judgments of "state courts where federal statutes . . . were involved, or when a state statute had been upheld, though challenged under the federal constitution." *Martin v. Hunter's Lessee*, 14 U.S. 304 (1816). In coming to this conclusion, Justice Story, who wrote for the majority, observed that the American people had lodged the national judicial power exclusively in the federal courts and intended that the power to interpret the federal Constitution had to rest with one ultimate source of authority, which was the United States Supreme Court. To rule otherwise, would have robbed the Supremacy Clause of its salience because the states would not have been bound to conform their laws to a national standard. *Id.* The rule articulated in *Martin* is no less salient today than it was in 1816. The Supreme Court continues to recognize that state courts possess sovereignty concurrent with the federal government but that that sovereignty is subject to the limitations of the Supremacy Clause.

In other words, it is the federal judiciary, not the state courts, that are the final arbitrator of federal law. Section 2254(d)(1) violates this principle and, by doing so, violates the Constitution.

Next, the State places a great deal of importance on its observation that *Loper Bright* is primarily a statutory construction case. This observation may be correct, but the majority, as well as the concurrences of Justices Thomas and Gorsuch, relies not just on statutory interpretation to reach its conclusion, it also discusses why the *Chevron* doctrine is offensive to the Constitution. The wording of § 2254(d)(1) may or may not be clear but that does not save it from constitutional scrutiny. In the end, § 2254(d)(1) suffers from the same flaws as the *Chevron* doctrine. In *Chevron,* the Court voluntarily relinquished its authority in violation of the separation of powers doctrine. Through passage of § 2254(d)(1), Congress unlawfully intruded upon the federal judiciary's authority to interpret federal law and, for all practical purposes, handed it over to the states. In doing so, it exceeded its Article I authority and set up a regime inimical to the Supremacy Clause.

Finally, relying on *Burt v. Titlow*, 571 U.S. 12, 19 (2013), the State argues that "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." Neiss does not, as a general matter, disagree with this claim. But, as *Burt* goes on to note, this authority is limited by the Supremacy Clause and the notion that federal courts are the ultimate arbiter of federal questions. *Id.; see also, Sims v. State of Georgia*, 385 U.S. 538, 543-44 (1967)("a constitutional rule [is] binding upon the states and, under the Supremacy Clause . . must be obeyed"); *Reynoldsville Casket Co., v. Hyde*, 514

U.S. 749-753-54 (1995)("we do not see how . . . the Ohio Supreme Court could change a legal outcome that federal law under the Supremacy Clause, would otherwise dictate simply by calling its refusal to apply that federal law an effort to create a remedy"). By effectively closing off federal review of habeas petitioners' constitutional claims, § 2254(d)(1) violates this long-standing principle and is therefore unconstitutional.

**2. Section 2254(d) should not be applied to Neiss's ineffective assistance claim because the Montana Supreme Court's adjudication of that claim resulted in a decision that misapplied and/or is contrary to the Supreme Court's decision in *Strickland v. Washington* and *Kimmelman v. Washington*.**

The Montana Supreme Court determined that Neiss failed to challenge the August 2015 warrant on particularity grounds in the trial court and therefore waived the issue on appeal. *State v. Neiss*, 443 P.3rd 435, 452 (Mont. 2019)(*Neiss I*). When he raised this failure as an ineffective assistance claim during post-conviction proceedings, the Montana Supreme Court nevertheless concluded that counsel provided effective assistance due to trial counsel's "dogged[] attempt[s] to suppress evidence from both the 2013 and 2015 warrants on multiple grounds." *Neiss v. State*, 2021 WL 4443830 at *2. (D. Mont. Sept. 28, 2021).

> Neiss argues that because this Court found the objection of particularity was not preserved below, he has established the first prong of *Strickland*. Failing to preserve an issue for appellate review does not amount to "a presumptively deficient performance ...." *Hammer v. State*, 2008 MT 342, ¶ 13, 346 Mont. 279, 194 P.3d 699. Neiss's trial

> counsel doggedly attempted to suppress the evidence obtained from both the 2013 and 2015 search warrants on multiple grounds. They also attempted to exclude the evidence via motions in limine. Neiss has not carried his heavy burden of rebutting the strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance contemplated by the Sixth Amendment. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

*Id.*

As the preceding analysis shows, the Montana Supreme Court misapplied the rule in *Kimmelman v. Morrison*, 477 U.S. 365 (1986). It may be true that "failing to preserve an issue of appellate review" does not amount to "a presumptively deficient performance." But it is equally true that "a single serious error may support a claim of ineffective assistance of counsel." *Kimmelman*, 477 U.S. at 383. As in *Kimmelman*, the State has argued that "the Montana Supreme Court correctly concluded that Neiss had failed to establish deficient performance because it was clear that defense counsel had continually attempted to suppress evidence obtained from the March 2013 and August 2015 search warrants on multiple grounds."[2] State Brf. at 50.

[2] In *Kimmelman*, the state argued that "the mere failure to file a timely suppression motion alone does not constitute a *per se* Sixth Amendment violation." The state then went on to argue that the trial court record "amply reflects that trial counsel crafted a sound trial strategy" and "[v]iewed in its entirety, counsel's pretrial investigation, preparation, and trial performance were professionally reasonable." *Kimmelman*, 477 U.S. at 383.

Contrary to the States's argument, the Montana Supreme Court's treatment of Neiss's claim resulted in a decision that misapplied and/or is contrary to the Supreme Court's decisions in *Strickland v. Washington*, 466 U.S. 668 (1984) and *Kimmelman v. Morrison*, 477 U.S. 365 (1986). In these cases and others, the "Supreme Court has consistently held that a single, serious error is sufficient to support a claim of ineffective assistance of counsel." *Garding v. Montana Dep't of Corr.,* 105 F.4th 1247, 1267 (9th Cir. 2024)(Fletcher, J., dissenting); *see also, Murray v. Carrier*, 477 U.S. 478, 496 (1986); *United States v. Cronic*, 466 U.S. 648, 657, n.20 (1984).

In both this case and in *Kimmelman*, trial counsel failed to file a suppression motion – not for strategic reasons – but because of a misunderstanding. Defense counsel in *Kimmelman* failed to file such a motion due to a misunderstanding of the state's discovery rules. *Id.* at 385. In this case, trial counsel failed to advance a particularity argument because they mistakenly believed it had been raised. Strategy played no role in either case. And while, it is true that "*Strickland* requires a reviewing court to 'determine in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance,'" *Id.* at 386 (quoting *Strickland*, 466 U.S. at 690), there is no authority holding that "when counsel makes numerous unavailing objections but fails to object on the one meritorious ground, counsel's performance is effective." *Neiss v. Bludworth*, 114

F.4th 1038, 1047 (9th Cir. 2024). Such a holding directly conflicts with and is an unreasonable application of the rule in *Kimmelman.*[3] Thus, Neiss's ineffective assistance claim is not entitled to § 2254(d)(1) deference. *Franz v. Hazey*, (9th Cir. 2008).

### B. Neiss's trial and appellate counsel provided ineffective assistance of counsel.

#### 1. Trial counsel was ineffective in that they failed to properly contest the search warrant issued in August of 2015.

"The Fourth Amendment requires that a search warrant particularly describe both the place to be searched and the person or things to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). The warrant "must be specific enough to enable the person conducting the search to identify the things authorized to be

[3] The State argues that the Montana Supreme Court effectively ruled on the prejudice prong of Neiss's *Strickland* claim because, although prejudice was not mentioned in *Neiss II*, the Montana Supreme Court is presumed to have adopted the "same reasoning as the lower-court decision." State Brf. at 53. To support this conclusion, it relies on *Clark v. Broomfield*, 83 F.4th 1141 (9th Cir. 2023). But in *Clark*, which relies on *Harrington v. Richter*, 562 U.S. 86 (2011), the state court issued a summary denial that did not provide any reason for its denial of the prisoner's claims. In that type of case, a federal habeas court is entitled to "look through" the Montana Supreme Court's decision to the trial court's decision and accept that reasoning. But here, the Montana Supreme Court found the representation adequate and never reached the issue of prejudice. Therefore, the prejudice element of the *Strickland* claim should be reviewed *de novo*. *Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *see also, Ylst v. Nunnmaker*, 501 U.S. 797, 804-06 (1991)(the relevant state court decision under AEDPA review is the last reasoned state court decision).

seized." *Id.* The purpose of this rule is meant to prevent "general exploratory searches and indiscriminate rummaging through a persons's belongings." *Id.* With respect to computer searches, "the vast amount of data" requires a "heightened" specificity requirement. *United States v. Holcomb*, 132 F.4th 1118, 1127 (9th Cir. 2025).

There are three elements necessary to satisfy this requirement. "First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Third, the warrant must specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445-46 (2nd Cir. 2013)(citations omitted). In searching for electronically stored evidence, the particularity requirement requires a search warrant to affirmatively limit the search to evidence of specific crimes or specific types of material. It must also be temporally limited. *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995).

If a warrant is not sufficiently particular, details in an accompanying affidavit may cure its deficiencies and allow the court to "evaluate the affidavit and the warrant as a whole." *United States v. King*, 737 F.Supp.3d 1020, 1027 (D. Nev. 2024)(citing *United States v. SDI Future Health, Inc.,* 568 F.3d 684, 699 (9th Cir. 2009). The Ninth Circuit "consider[s] an affidavit to be part of the warrant and therefore potentially curative of any defects only if: (1) the warrant expressly

incorporated the affidavit by reference and (2) the affidavit either is attached physically or at least accompanies the warrant while the agents execute the search." *SDI Future Health, Inc.,* 568 F.3d at 699. "The goal of the 'cure by affidavit' rule is to consider those affidavits that limit the 'discretion of the officers executing the warrant.'" *Id.* (quoting *United States v. Towne*, 997 F.2d 537, 545 (9th Cir. 1993). In this case, the search warrant at issue reads as follows:

> **THE STATE OF MONTANA TO**
> **DETECTIVE SHANE X. BANCROFT**
>
> A sworn affidavit having been made before me by Shane X. Bancroft, a Detective for the Yellowstone County Sheriff's Office that he has reason to believe that in and upon a certain premises within the County of Somerset, State of New Jersey, and particularly described as:
>
> 1 Generic Tower, AMD/Athlon, w Asus motherboard with 3 hard drives
>
> 1 Sony Lap Top Computer, Model PCG-6G4L, # CXZMM01BRD02D110
>
> 1 Dell Inspiron 6000 lap top computer, # JPXR091
>
> There have been and are now located certain items of personal property which are EVIDENCE and are particularly described as being:
>
> **Records of Internet Searches and results**
> **Personal documents to include journals, notes, receipts**
> **Photos Emails (Sent, Received Drafts)**
>
> I am satisfied that there is probable cause to believe that the property described is upon said residence.

> You are hereby commanded to serve this warrant and search the place described above for the property specified, and if the property is found there, to seize it, give a receipt for it, prepare and bring before me a written inventory verified by you of the property seized, all in the manner required by law.
>
> Service of this warrant may be made either during the daytime or nighttime.
>
> Dated this 12th day of August 2015.
>
> DISTRICT COURT JUDGE

As set forth in Neiss's opening brief, the August 2015 search warrant was insufficiently particularized for a number of reasons. First, it does not include any reference to the crime under investigation, deliberate homicide. Nor does it contain a citation to the statute defining the crime. The failure to reference a suspected crime is enough to render a warrant insufficiently particularized. *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (noting that "the warrant failed to give any indication of the alleged crime to which the seized documents pertained"); *United States v Galpin*, 720 F.3d 436, 447 (2nd Cir. 2013); *In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66 (2d Cir. 2016) (warrant lacked particularity on its face as no crimes were listed); *Minx v. Knox*, 613 F.3d 995, 1011 (10th Cir. 2010) (warrant was clearly invalid as it authorized the search and seizure of all computer and non-computer equipment and written materials in defendant's house without any mention of any particular crime to which it might be related). As in *Minx*, the August 2015 warrant

allowed the search of Neiss's computers, but did not specify what evidence was to be seized, or what crime was being investigated.

The warrant also lacked particularity because the categories of items it listed to be searched – "records of internet searches and results, personal documents to include journals, notes and receipts, photos, and emails (sent, received, drafts)" – do not have any limits and appear to encompass virtually anything that is ordinarily held on a personal computer. The warrant says nothing about what evidence is to be found during a search of these broad categories of items. A warrant should enable "the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Cooper*, 654 F.3d 1104, 1126 (10th Cir. 2011); *United States v. Holcomb*, 132 F.4th 1118, 1128 (9th Cir. 2025).

Nor does the warrant contain a temporal limitation and, as a result, it authorized the State "to open and examine any file from any time period, including files that long predated the alleged murder." *Holcomb*, 132 F.4th at 1128. Because Neiss's computers contained thousands of files and because the warrant did not contain any temporal limitations, the police were given unfettered discretion in determining which files to scroll past and which ones to open. *Id.* at 1129.

Contrary to the State's argument, these deficiencies were not cured by the affidavit filed in support of the warrant. There is no language in the warrant that

expressly incorporated the affidavit by reference. *King*, 737 F.Supp.3d at 1029.[4] Nor is there any evidence that the affidavit was either attached physically or accompanied the warrant while Agent Salacinski executed the search of Neiss's computers. To the contrary, acting on his own accord, Salacinski set a "time period" that the police were interested in searching for data on the computers.

The State has argued that Salacinski's self-imposed constraints rendered his search constitutional because they limited its scope. But, unless such constraints are set forth in the warrant (or at least incorporated by reference in the affidavit) there can "be no written assurance that the Magistrate actually" authorized the scope of the search or the types of items that can be seized. *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). As the Supreme Court has noted:

> The mere fact that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request. Even though petitioner acted with restraint in conducting the search, "the inescapable fact is that this restraint was imposed by the agents themselves, not by a judicial officer.

*Groh*, 540 U.S. at 561 (quoting *Katz v. United States*, 389 U.S. 347, 356 (1967).

---

[4] In *King*, the warrant incorporated the affidavit by reciting that it is based on the "Affidavit attached hereto as Exhibit 3, and incorporated by reference herein by this reference." *Id.*

In sum, the August 2015 search warrant was invalid on its face and was insufficiently particularized. It did not reference the crime under investigation. The search it authorized was not temporally limited. The categories of items listed to be searched and/or seized did not sufficiently limit law enforcement's discretion and allowed for a general rummaging through Neiss's records.

When looking at the warrant, there is no way to determine what information is subject to seizure and what information is not. As such, it lacks particularity and is invalid on its face. If trial counsel had properly litigated Neiss's Fourth Amendment claim, the evidence seized during the search of his computers would have been suppressed.

Counsel's failure to do so, moreover, worked to prejudice Neiss's defense. The prejudice to his case has been exhaustively discussed in his Amended Petition and need not be repeated here, except to say that the test for prejudice in applying the standard of the *Strickland* case is whether counsel's mistake deprived the defendant of "a substantive or procedural right to which the law entitled him." *Williams v. Taylor*, 529 U.S. 362, 392-93 (2000). "The prejudice essential to a violation of the Sixth Amendment right to effective assistance of counsel is not being convicted though one is innocent, although that is the worst kind; it is being convicted when one would have been acquitted, or at least would have had a good

shot at acquittal, had one been competently represented." *Owens v. United States*, 387 F.3d 607, 610-11 (7th Cir. 2004).

Contrary to these well known principles, the State appears to argue that it had a strong circumstantial case and that an evaluation of the evidence sinks any claim that Neiss's trial would have had a different outcome if his attorneys had competently moved to suppress the computer evidence. Its argument on this point, however, has been rejected by the Ninth Circuit in *Crace v. Herzog*, 798 F.3d 840 (9th Cir. 2015), where it held that evidentiary sufficiency has no place in ineffective assistance of counsel analysis. The fact that there was enough evidence to support a conviction does not answer the questions as to whether there was a reasonable probability of a different result arising from counsel's deficient performance. *Saranchak v. Sec'y Pa. Dep't of Corr.,* 802 F.3d 579, 599 (3rd Cir. 2015)("*Strickland* prejudice does not depend on the sufficiency of the evidence despite counsel's mistakes.").

**2. Appellate counsel was ineffective in that she failed to raise a claim that trial counsel did not provide effective assistance of counsel when they failed to properly contest the search warrant issued in August of 2015.**

As stated in Neiss's Amended Petition, appellate counsel was ineffective when she failed to raise a claim that trial counsel were ineffective in failing to competently challenge the August 2015 warrant. A claim alleging that trial counsel

were ineffective was not waived and would have likely been entertained by the Montana Supreme Court. But, because it had been waived, Neiss's free-standing attack on the warrant was dismissed for procedural reasons, without any consideration of its merits. Under these circumstances, appellate counsel "ignored" an issue that was "clearly stronger" than that presented and, therefore, was ineffective.[5]

**C. Prayer for Relief**

WHEREFORE, the Petitioner, Patrick O. Neiss, prays that the Court entertain this amended petition, allow him to conduct discovery, hold an evidentiary hearing on his claims, and grant relief by ordering the Respondent to afford him a new trial and grant any other such relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 21st day of May, 2025.

/s/ David F. Ness

[5] In footnote 2 of its Answer, the State takes issue with Neiss's claim that Nancy Schwartz, who was his appellate lawyer, "also prepared most of the defense briefing submitted during the trial proceedings." Although it may not carry much relevance and, it is not record based, the undersigned has spoken with Neiss's trial counsel, particularly Nancy Schwartz, and has been told that she did, in fact, draft most of the pretrial motions in Neiss's case. Lisa Bazant may not have drafted the motions. But she did review and sign them.

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, a copy of the foregoing document was served on the following persons by the following means:

_1, 2_ CM-ECF
______ Hand Delivery
__3__ Mail
______ Overnight Delivery Service
______ Fax
______ E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. AUSTIN KNUDSEN
   Montana Attorney General
   CORI LOSING
   TAMMY PLUBELL
   Assistant Attorneys General

3. PATRICK O. NEISS
   Petitioner

/s/ David F. Ness